NOT DESIGNATED FOR PUBLICATION

No. 119,650

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAERED A. LONG
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; BARBARA KAY HUFF, judge. Opinion filed August 2, 2019.
Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., STANDRIDGE, J., and MCANANY, S.J.

PER CURIAM: In this appeal, Jaered Long contends the district court erred in not permitting him to withdraw his plea to the State's charge of intentional second-degree murder in spite of the fact that his history of mental health issues and the medications he was taking affected his ability to understand the nature and consequences of his plea. Based upon our review of the record, we conclude that Long has failed to show any error. Accordingly, we affirm the district court's denial of Long's motion.

Long originally was charged as a juvenile with the murder of his grandmother. The district court waived him to adult status, and the State charged him as an adult with

1

premeditated first-degree murder. He was also charged in a separate juvenile case with two counts of aggravated battery of a law enforcement officer. The State initially offered a plea agreement under which Long would agree to plead to the adult charge of felony murder with no possibility of parole for 25 years. (The off-grid guideline sentence in effect at the time of Long's crime was a hard 50 life sentence.) Long rejected this offer. The State and Long later negotiated a plea agreement, under which Long agreed to being prosecuted as an adult. He also agreed to plead no contest to two charges of aggravated battery on a law enforcement officer and, with that elevated criminal history, to plead no contest to the reduced charge of intentional second-degree murder. The parties agreed to recommend a sentence of 586 months' imprisonment. Long executed a written acknowledgement of the rights he was waiving and that he was not threatened or coerced into entering into the agreement.

At the plea hearing, which took about an hour, the State read the plea agreement into the record. Long agreed that he understood the terms of the agreement, that he had enough time to think about it, and that he wished to enter his plea. He acknowledged that he had received other offers and affirmed that he had chosen to enter this agreement. He explained that he did not want to go through the emotional strain of a trial and that he wanted a definite release date, not the prospect of a life sentence. In choosing to agree to a recommended 586-month sentence, Long stated he was acting against the advice of his family who wanted him to agree to recommend to the sentencing court a life sentence with merely a chance of parole.

Long's counsel advised the court of the various medications Long was taking. Those medications were designed to quell Long's symptoms of mental instability, not aggravate them. When the court enquired about Long's mental state, Long stated that he did not have any difficulty understand what the court was telling him because his medications helped clarify his thoughts most of the time, and on that day his mind was

clear. The court told Long to interrupt at any time if anything was said that he did not understand, and Long agreed to do so.

Long responded appropriately to the court's questions and expressed his understanding of the plea agreement. He stated that his lawyer had read the agreement to him, that he understood the agreement, and that he had knowingly entered into it.

The court advised Long that on the State's charge of intentional second-degree murder the guideline sentence range was from 147 to 653 months, depending on Long's criminal history, and that under the agreement the parties were recommending a sentence of 586 months—"That is almost 50 years? You understand?" Long acknowledged that he understood.

The district court accepted Long's plea and found him guilty of intentional second-degree murder as well as the other charges.

Before sentencing, Long moved to withdraw his plea, arguing that his history of mental illness and his medications "obscur[ed] his focus and [made] it harder for him to think and understand what he was doing" at the plea hearing. He also claimed he believed that, at the hearing, he was entering a plea to receive a sentence of 25 years to life rather than the agreed 586 months' imprisonment.

At the hearing that followed, Long testified that he was "frantic and depressed" at the plea hearing and that the medications he was taking "obscured [his] focus" and made him "do things without thinking them through." Moreover, he was afraid to go to trial and took a plea because of his "depressed state of mind." He testified that he thought he understood the questions asked by the trial court at the plea hearing but realized later that he did not. He stated that he decided to enter the plea because "people that love[d him]

3

thought it would be better for [him]." He claimed that he did not know the plea would lead to a sentence of close to 50 years in prison.

The district court found that the plea agreement was knowingly and understandingly made and denied relief on Long's motion. The court then sentenced Long to 586 months in prison.

Long appeals, arguing that the district court erred in finding that he knowingly and voluntarily entered his plea.

A defendant can withdraw a plea before sentencing "for good cause shown and within the discretion of the court." K.S.A. 2018 Supp. 22-3210(d)(1). Because Long's motion was raised before sentencing, we review the district court's decision to see if Long met his burden to show good cause for withdrawing his plea. See *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018). Applying the abuse of discretion standard, we consider whether the district court's denial of Long's motion was (1) arbitrary, fanciful, or unreasonable or (2) was based on an error of law or fact. An error of fact occurs when "substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

In considering Long's contentions, we do not reweigh evidence or assess witness credibility. When the same judge presided over both the plea hearing and plea withdrawal hearing, that judge is in the best position to resolve conflicts in the testimony and any credibility issues. See *State v. Schaefer*, 305 Kan. 581, 595-96, 385 P.3d 918 (2016). Here, the judge who presided over Long's plea hearing also presided over the hearing on Long's motion to withdraw his plea.

4

To determine whether good cause exits to withdraw a plea prior to sentencing, our courts consider the nonexclusive *Edgar* factors found in *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006): (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; or (3) whether the plea was fairly and understandingly made. Here, Long argues on appeal that the third *Edgar* factor applies due to his history of mental illness and his medications, which affected his ability to knowingly and voluntarily enter a plea.

The district court had a duty to inquire further once it learned about Long's medications. See *United States v. Rossillo*, 853 F.2d 1062, 1066 (2d Cir. 1988). But as stated in *State v. Christensen*, 23 Kan. App. 2d 910, 913, 937 P.2d 1239 (1997), *disapproved of on other grounds by State v. Bolin*, 266 Kan. 18, 968 P.2d 1104 (1998), "a defendant who is taking prescription drugs, and who informs the court that he or she is not under the influence of any intoxicating drugs, is able to make a voluntary plea."

An argument similar to the one Long now makes was previously made in *State v. Denmark-Wagner*, 292 Kan. 870, 258 P.3d 960 (2011). There, the defendant unsuccessfully sought to withdraw his guilty plea before sentencing for a first-degree murder conviction by arguing that his plea was not knowingly and understandingly made because he was taking a prescription medication at the time of the plea hearing. Our Supreme Court noted that before accepting a plea the district court is not required to inquire about medications a defendant may be taking, so long as the court ensures: "(1) that the defendant is informed of the maximum penalty that may be imposed if the defendant accepts the plea, (2) that the defendant understands the nature of the charge, and (3) that the defendant understands the consequences of pleading guilty." 292 Kan. at 878. The record thoroughly refuted Denmark-Wagner's claim that his plea was not knowingly and understandingly made and, moreover, he had informed the court in his written plea agreement that his medications did not affect his ability to understand the plea.

In our present case, Long attempts to distinguish *Denmark-Wagner* because Long testified at his plea hearing that his medications helped clear his thoughts only "most times." But the district court specifically asked if "most times" included the day of the plea hearing, and Long confirmed that it did. Long agreed with the court that if he was confused about anything during the hearing he would interrupt and so advise the court.

Moreover, Long does not argue on appeal that had the district court inquired it would have learned that the drugs Long was taking had the side effect of impairing his ability to understand the nature of the amended charges against him, the terms of his plea agreement with the State, the consequences of entering his plea to those charges, or the possible sentence the court might impose. To the contrary, Long was active and engaged throughout the plea hearing and did not provide any inappropriate responses which would suggest that he was confused or not mentally engaged in the proceedings. On numerous occasions throughout the hearing, the district court referred to the recommended 586-month sentence, and Long never expressed any confusion or reservation about this recommendation. Long agreed to the State's plea proposal because he wanted a definite release date as opposed to being subject to a possible life sentence with no assurance of parole.

The district court did not abuse its discretion in finding that Long failed to demonstrate good cause to withdraw his plea. Accordingly, we affirm the district court's denial of Long's motion to withdraw his plea.

Affirmed.

6